Argued and submitted September 22, 1980, affirmed in part;
remanded in part for resentencing March 23, 1981

## STATE OF OREGON,
*Respondent,*

*v.*

## ROGER WILLIAM DIVERS,
*Appellant.*

(No. 19-880, CA 17467)

625 P2d 681

Cary A. Gluesenkamp, Hillsboro, argued the cause and filed the brief for appellant.

John C. Bradley, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

CAMPBELL, J. PRO TEMPORE.*

---

*Appointed to Supreme Court December 1, 1980.

## CAMPBELL, J. PRO TEMPORE.

Defendant entered pleas of guilty to the offenses of assault in the fourth degree (ORS 163.160) and theft in the second degree (ORS 164.045), both Class A misdemeanors. The incident occurred in a retail store. A security officer, Thomas Moore, observed defendant remove his boots and put them on a shelf and take new boots from the shelf and put them on his feet. The officer started to say something to defendant about the boots when defendant struck him, breaking his nose. Moore was unable to work for a number of days. His employer paid him lost time benefits during his time off. The employer was in turn reimbursed by its workers' compensation insurer.

Defendant alleges the trial court erred: (1) by ordering him to make restitution to the insurer in the amount of $662 for payment of the lost time benefits;[1] (2) by failing to state on the record adequate reasons to justify the imposition of consecutive jail terms; and (3) by imposing consecutive jail sentences which defendant claims are excessive and constitute cruel and unusual punishment. We affirm except as to the order of restitution.

---

[1] ORS 137.106 provides:

"(1) When a person is convicted of criminal activities which have resulted in pecuniary damages, in addition to any other sentence it may impose, the court may order that the defendant make restitution to the victim.

"* * * * *."

The operative terms are defined in ORS 137.103, as follows:

"As used in ORS 137.103 to 137.109 * * *:

"(1) 'Criminal activities' means any offense with respect to which the defendant is convicted or any other criminal conduct admitted by the defendant.

"(2) 'Pecuniary damages' means all special damages, but not general damages, which a person could recover against the defendant in a civil action arising out of the facts or events constituting the defendant's criminal activities and shall include, but not be limited to, the money equivalent of property taken, destroyed, broken or otherwise harmed, and losses such as medical expenses.

"(3) 'Restitution' means full, partial or nominal payment of pecuniary damages to a victim.

"(4) 'Victim' means any person whom [sic] the court determines has suffered pecuniary damages as a result of the defendant's criminal activities; 'victim' shall not include any co-participant in the defendant's criminal activities."

In *State v. Stalheim,* 275 Or 683, 552 P2d 829 (1976), the court narrowly construed Oregon's restitution statute and held that a convicted offender could only be ordered to make restitution to the "direct victim" of the crime. Subsequently, in *State v. Getsinger,* 27 Or App 339, 556 P2d 147 (1976), we found that the insurer of a vehicle was not the direct victim of defendant's unauthorized use of the vehicle. We held the defendant was improperly ordered to make restitution to the insurer even though the insurer suffered a loss by paying a claim arising out of the unauthorized use. *See also State v. Rose,* 45 Or App 879, 609 P2d 875 (1980).

In 1977, the legislature responded to the Supreme Court's opinion in *State v. Stalheim, supra,* by substantially amending the restitution statutes. Or Laws 1977, ch 371. The legislature was particularly concerned with expanding the category of persons who could receive restitution. Minutes, House Committee on Judiciary, April 29, 1977, pp 10, 12-13; Minutes, Senate Committee on Judiciary, May 31, 1977, pp 5-6. Five bills addressing the problem of compensating victims of crime were introduced. House Bill 2012, the bill eventually enacted into law, initially contained a section which specifically provided that an insurer could recover from the defendant if it paid a victim's damages. That section was deleted, however, when legislative counsel and others expressed their belief that the bill's broad definition of "victim" would include insurance companies. Minutes, House Committee on Judiciary, February 21, 1977, p 5, Exhibit B at 3; April 29, 1977, p 17. There was some concern that a separate section covering insurers would result in a restrictive interpretation of the general definition of "victim."

Under the present statutory scheme, a victim is
"* * * any person whom [sic] the court determines has suffered *pecuniary damages* as a result of the defendant's criminal activities * * *." (Emphasis supplied.) ORS 137.103(4).

Pecuniary damages are
"* * * all special damages * * * which a person could recover against the defendant *in a civil action* arising out of facts or events constituting defendant's criminal activities * * *." (Emphasis supplied.) ORS 137.103(2).

In this case, the insurance company's loss was a direct consequence of defendant's assault of the security officer. The only question, therefore, is whether the insurance company could recover the lost time benefits in a civil action against defendant.

■      An insurance company which pays a loss to its insured because of the wrongful conduct of a third party is subrogated to the rights of the insured to the extent of the money paid. *Olds v. Von Der Hellen et al.,* 127 Or 276, 263 P 907, 270 P 497 (1928); *Home Mutual Ins. Co. v. O. R. & N. Co.,* 20 Or 569, 26 P 857 (1891). The subrogation thus permits the insurer to recover for damages paid under its policy from the person who caused the damages. *Northwestern Mutual Ins. Co. v. Peterson,* 280 Or 773, 572 P2d 1023 (1977). In the present case, the insurer would be subrogated to whatever rights the security officer's employer has against defendant.

■      Under Oregon's Workers' Compensation Law (ORS chapter 656), the employer's right to maintain an action against a third party wrongdoer is conditioned on whether the injured worker elects to pursue a civil action. The worker is required to make an election. ORS 656.578. An election not to proceed against the third party operates as an assignment of the cause of action to the "paying agency."[2] ORS 656.591. If there is an effective assignment, the employer (or the insurer by way of subrogation) could recover damages against the third party in a civil action. Thus, in a criminal prosecution arising out of the same facts or events, there would be no problem with ordering restitution to be made to an insurance company which in all other respects was a victim of the defendant's criminal activities.

On the other hand, if the worker elects to pursue the cause of action, the "paying agency" does not share in the cause of action but merely has a lien against it for its share of the proceeds. ORS 656.580(2), 656.593(1). Moreover, the worker is entitled to 25 percent of the recovery in

---

[2] "Paying agency" is defined in ORS 656.576 to be "the employer or State Accident Insurance Fund Corporation paying benefits to the worker or beneficiaries."

excess of costs and attorney fees whether or not the recovery is large enough to fully compensate the "paying agency" for its expenditures. ORS 656.593. Consequently, the insurer's subrogation claim is totally dependent on the recovery received by the worker.

Receipt of benefits under the Workers' Compensation Law does not operate as an election not to proceed against a third party. *Wimer v. Miller,* 235 Or 25, 383 P2d 1005 (1963). The paying agency may, however, compel election. ORS 656.583. Because we cannot tell from the record in this case whether or not the injured worker has made an election, we remand this case to the trial court to require the defendant to make restitution in the amount of $662 for lost time benefits to the injured worker and the insurance company as their interests may appear.

■    Defendant next argues that the court erred in failing to adequately state on the record the reasons for the sentences imposed. The statute on which defendant relies applies only to felony convictions. ORS 137.120(2). The trial court did not err.

■■    Finally, defendant complains that the imposition of two one-year consecutive sentences (both suspended) was inappropriate and constitutes cruel and unusual punishment. The court has inherent power to impose consecutive sentences. *State v. Jones,* 250 Or 59, 440 P2d 371 (1968). The two suspended sentences imposed against defendant are not "so disproportionate to the offense as to shock the conscience of fairminded men." *State v. Dinkel,* 34 Or App 375, 389, 579 P2d 245 (1978), *rev den* (1979). There was no error.

Affirmed in part; remanded in part for resentencing.